1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

SAN JOSE DIVISION

7

8

DAMARCUS STEWART, on behalf of himself and all others similarly situated,

Case No.   22-cv-01926-EJD

9

Plaintiff,

**ORDER GRANTING (1) MOTION (AS MODIFIED) FOR FINAL SETTLEMENT APPROVAL AND (2) MOTION (AS MODIFIED) FOR ATTORNEYS' FEES AND COSTS AND SERVICE AWARD**

10

v.

11

ACCURATE BACKGROUND, LLC,

12

Defendant.

Re: ECF Nos. 53, 54

13

14

In this putative class action, Plaintiff Damarcus Stewart ("Mr. Stewart" or "Plaintiff")

15

alleges that Defendant Accurate Background, LLC ("Accurate Background or "Defendant"),

16

which provides background and employment screening services, violated federal and California

17

laws by failing to use reasonable procedures to assure the maximum possible accuracy of criminal

18

record information, and specifically failing to identify circumstances criminal records had been

19

expunged or sealed.  *See* Am. Class Action Compl. ("FAC"), ECF No. 22.  Mr. Stewart brings one

20

individual claim for defamation and six representative claims for violations of the federal Fair

21

Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681e(b); California's Consumer Credit Reporting

22

Agencies Act, Cal. Civ. Code § 1785.14(b); California's Investigative Consumer Reporting

23

Agencies Act, *id.* §§ 1786.18(c), 1786.20(b), 1786.28(b); and California's Unfair Competition

24

Law, Cal. Bus. & Prof. Code § 17200.  *See* FAC ¶¶ 58–93.  Now pending before the Court are two

25

unopposed motions filed by Mr. Stewart:  (1) a Motion for Final Approval of Class Action

26

Settlement (the "Approval Motion") and (2) a Motion for Attorneys' Fees and Costs and for

27

Approval of Service Award (the "Fees Motion" and together, the "Motions").  *See* Approval Mot.,

28

Case No.: 22-cv-01926-EJD
ORDER GRANTING MOTS. FOR SETTLEMENT APPROVAL & ATTYS.' FEES

United States District Court
Northern District of California

1    ECF No. 53; Fees Mot., ECF No. 54.  The Court held an initial final fairness hearing on February

2    22, 2024, after which Mr. Stewart submitted unopposed modifications to the Motions.  *See* ECF

3    Nos. 58, 60.  The Court held a further final fairness hearing on March 7, 2024.  *See* ECF No. 61.

4    For the reasons set forth below and on the record at the final fairness hearings, the Court

5    GRANTS the modified versions of the Approval Motion and the Fees Motion.

6    **I.    BACKGROUND**

7         On February 21, 2022, Plaintiff filed this putative class action in the Santa Clara County

8    Superior Court against Defendant, alleging that Defendant failed to use reasonable procedures to

9    assure the maximum possible accuracy of criminal record information included on its reports and

10   failed to identify situations where criminal records had been expunged or sealed.  *See* Compl.,

11   ECF No. 1-1.  Plaintiff alleged that Defendant prepared and disseminated a consumer background

12   report on Plaintiff in or around May 2021, and that Defendants' report stated that Plaintiff was

13   convicted of misdemeanor charges in September 2015 and October 2016.  *Id.* ¶¶ 36–37.  Plaintiff

14   further alleged that both criminal records had been expunged by court order on March 26, 2021.

15   *Id.* ¶ 38.  Plaintiff alleged that Defendant prepared and disseminated an updated report in or

16   around June 2021, and that this subsequent report was similarly incomplete and inaccurate as it

17   omitted the expungement information.  *Id.* ¶ 39.  Plaintiff further alleged he has applied for and

18   been denied employment opportunities, and that he has been informed that the basis for these

19   denials was the inaccurate information on the consumer reports prepared by Defendant.  *Id.* ¶ 43.

20   Plaintiff thus alleged that Defendant's conduct has caused him to suffer actual damages in the

21   form of lost employment opportunities, harm to reputation, and emotional distress, and asserted

22   representative claims on behalf of both a nationwide class and a California subclass, in addition to

23   his independent claim for defamation.  *See id.* ¶¶ 57–83.

24        Defendant removed the action to this Court on March 25, 2022.  *See* Not. of Removal,

25   ECF No. 1.  In July 2022, prior to any motion practice, the parties stipulated to private mediation,

26   and the Court granted the stipulation.  *See* ECF Nos. 16, 17.  Following written discovery and a

27   private mediation session with Judge Diane Walsh (ret.) on March 15, 2023, *see* Mot. 3, the

28   Case No.: 22-cv-01926-EJD

parties notified the Court on March 29, 2023 that they had reached an agreement in principle to settle this action on a class-wide basis, *see* ECF No. 20.  On May 5, 2023, Plaintiff filed the FAC concurrently with a motion for preliminary approval of the parties' class settlement agreement (the "Original Settlement Agreement").  *See* FAC; ECF No. 23-1.

The Court granted preliminary approval of the settlement in November 2023, but noted certain that it would further scrutinize certain terms—particularly the amount reserved for attorneys' fees and the individual settlement payment to Plaintiff related to his independent defamation action—at the final fairness review.  *See* Order Granting Mot. Prelim. Approval ("Prelim. Appr. Order") 6–8, ECF No. 50.  Following the Court's discussion of these issues with the parties at the final fairness hearings, the parties submitted a modification to the Settlement Agreement with respect to the identified issues.  *See* ECF No. 60.  The Court will refer to the Settlement Agreement, as modified, as the "Final Settlement Agreement," and conducts the remainder of its analysis with respect to the terms of the Final Settlement Agreement.

A.      **Settlement Terms**

Under the terms of the Final Settlement Agreement, Defendant will pay a non-reversionary settlement amount of $383,750.00 into a qualified settlement fund (the "Settlement Fund") for payments to class members, without admitting liability.  This amount includes attorneys' fees and costs, the cost of settlement administration, and Mr. Stewart's service award.

1.      **Settlement Class**

The Final Settlement Agreement defines the class ("Settlement Class") as:

From the period of February 20, 2020 to February 28, 2023, all natural persons residing in the United States and its Territories:

(a) about whom Defendant furnished a consumer report for employment purposes;

(b) whose report contained one or more items of criminal record information relating to a record that had been (i) expunged, (ii) sealed, (iii) dismissed pursuant to California Penal Code § 1203.4, or (iv) otherwise extinguished from the public record;

United States District Court
Northern District of California

(c) who disputed information on their report;

(d) where an amended report was issued; and

(e) where the amendment of the report was related to the reporting of a criminal record(s) that, at some point before the resolution of the dispute, Defendant determined to be expunged, sealed, otherwise extinguished from the public record, or dismissed pursuant to California Penal Code § 1203.4.

The parties agree there are 230 individuals, including Mr. Stewart, in the Settlement Class.

## 2. Attorneys' Fees and Costs; Administration Costs; Service Award

Under the Final Settlement Agreement, Plaintiff's counsel agreed to seek up to $95,750.00 in attorneys' fees and $10,000.00 in litigation costs and expenses, for a total of $105,750.00. The Final Settlement Agreement also provides that $20,000 of the $383,750.00 Settlement Fund will be allocated to settlement administration costs (and that notice and administration costs in excess of the allocated $20,000 will also be paid from the Settlement Fund). Mr. Stewart is to receive a service award of $5,000.00 for his services to the Settlement Class, and provides a general release of all of his class claims in this action.

## 3. Class Relief

After deductions from the Settlement Fund for fees, costs, and service awards, an amount of $253,000.00 will remain to be distributed among the participating class members. Of this total, an amount of $69,000 will be used to automatically pay $300 to each of the 230 class members. The remaining $184,000 will be paid according to class members who submit a "simple attestation of harm" suffered, calculated on a pro rata basis determined by the total number of claims received but not to exceed $5,000 per any one individual. The Final Settlement Agreement provides that no amount shall revert to the Defendant.

## 4. Cy Pres/Remainder

The Final Settlement Agreement provides that, if any amounts remain in the Settlement Fund after all other payments are made and after sixty (60) days past the void date of the last dated settlement check, those funds shall be distributed by the Settlement Administrator to *cy pres*

United States District Court
Northern District of California

1   recipient the San Jose State University Record Clearance Project (https://www.sjsu.edu/rcp/).  The

2   parties selected this *cy pres* recipient because it is a program that works to ensure that criminal

3   history does not serve as a barrier to employment, an issue closely related to the subject matter of

4   this case.

5   **B.      Preliminary Approval**

6          As noted above, the Court preliminarily approved the Original Settlement Agreement in

7   November 2023.  The Court flagged three concerns related to the heightened fairness inquiry

8   required for a pre-certification class settlement under *In re Bluetooth Headset Products Liability*

9   *Litigation*, 654 F.3d 935, 947 (9th Cir. 2011).  *See* Prelim. Appr. Order 6–8.  *Bluetooth* requires

10  that the Court, in approving a pre-certification settlement, conduct a more probing and exacting

11  inquiry for any indicia of collusion or other conflicts of interest than is ordinarily required under

12  Rule 23(e).  *See* 654 F.3d at 947.  The Court reserved its concerns, which related to the various

13  fees allocated to Mr. Stewart and his counsel, for further discussion at the final fairness hearing

14  because it found the Original Settlement Agreement to be otherwise fair and reasonable, and did

15  not find its concerns to "warrant denial of preliminary approval or further delay in notifying the

16  class."  Prelim. Appr. Order 8.  The Court further found the parties' proposed notice plan (the

17  "Notice Plan") to be constitutionally sound, holding that "Plaintiff has made a sufficient showing

18  that it is: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to

19  apprise the Class members of the proposed settlement and of their right to object or to exclude

20  themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate,

21  and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable

22  requirements of due process and any other applicable requirements under federal law."  *Id.* at 8–9.

23  **C.      Notice**

24         The Final Settlement Agreement is being administered by American Legal Claim Services

25  ("ALCS").  Following the Court's preliminary approval and conditional certification of settlement,

26  ALCS implemented the Notice Plan.  *See* Decl. of Noah Fiori ("Fiori Decl."), ECF No. 53-1;

27  Updated Decl. of Noah Fiori ("Updated Fiori Decl."), ECF No. 57-1.

28  Case No.: 22-cv-01926-EJD
    ORDER GRANTING MOTS. FOR SETTLEMENT APPROVAL & ATTYS.' FEES

United States District Court
Northern District of California

1.    **CAFA Notice**

On May 15, 2023, ALCS mailed, via certified mail, a CAFA Notice pursuant to 28 U.S.C. § 1715 to the Attorneys General of the 50 states, the territory of Puerto Rico, the Attorney General of the United States, the District of Columbia's Corporate Counsel, the Attorney General for Guam, the Attorney General for American Samoa, the Attorney General for the United States Virgin Islands, and the Attorney General for the Northern Mariana Islands.  The CAFA Notice package contained a CD-ROM that included the following ten exhibits: (1) Class Action Complaint, (2) First Amended Class Action Complaint, (3) Proposed Email Notice of Class Action Settlement, (4) Proposed Postcard Notice of Class Action Settlement, (5) Proposed Long Form Notice of Class Action Settlement, (6) Proposed Claim Form, (7) Proposed Opt-Out Form, (8) Settlement Agreement, (9) Uncontested Motion for Preliminary Approval, and (10) Proposed Preliminary Approval Order.

2.    **Class Notice**

As described in the Fiori Declaration, ALCS received the mailing list ("Class List") on November 15, 2023 from Defendant's counsel.  The Class List contained 230 records.  All records had street addresses, and 229 records had at least one email address.  ALCS reviewed and processed the data and determined that each of the 230 records indicated a unique class member. After email validation, 196 email addresses were found to be valid and deliverable.  ALCS used methods included National Change of Address through the USPS and skip-tracing to determine the most accurate mailing addresses for class members.

On December 1, 2023, ALCS sent the Notice, substantially in the form approved by the Court, to 196 class members by email and the remaining 34 class members by postcard.  Nine of the initial email Notices were deemed undeliverable, so ALCS mailed those Notices to the addresses on file.  Of the 43 total mailed Notices, six were returned by USPS as of February 8, 2024.  ALCS remailed five Notices to updated addresses.  One class member has not yet been provided Notice, for a delivery rate of 99.6% (or 97.67% if one only looks at first class mail notices).

ALCS also created a dedicated settlement website ("the Settlement Website") at www.StewartFCRASettlement.com, containing information as listed in the Notice, access to Court documents, key dates, FAQs, and the ability to file a claim and/or update an address.  The Settlement Website was listed in the emailed and mailed Notices.

### 3.    Claims, Opt-Outs, and Objections

The Notice informed class members who wished to file a claim for the further payment of up to $5,000 to send their claim form by January 30, 2024.  The Notice provided the same deadline to opt out of the Settlement Agreement, and to file a written objection to the Final Settlement Agreement.  As of February 8, 2024, ALCS had received 21 valid claim forms and 0 exclusion requests.  The Court has received no objections to the Final Settlement Agreement.

## II.    MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A.    Legal Standard

A court may approve a proposed class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification.  Fed. R. Civ. P. 23(e)(2).  There exist four prerequisites for class certification are (1) numerosity, *i.e.*, the class is so numerous that joinder of all members is impracticable; (2) commonality, *i.e.*, there are questions of law or fact common to the class; (3) typicality; *i.e.*, the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) adequacy, *i.e.*, the representative parties will fairly and adequately protect the interests of the class.  *See* Fed. R. Civ. P. 23(a).  In a settlement-only certification context, the "specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  "In addition to satisfying the Rule 23(a) prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Id.* at 614.

If the proposed class in a settlement meets the Rule 23(a) and 23(b) requirements for certification, a court must then balance a number of factors to gauge fairness and adequacy,

United States District Court
Northern District of California

including the following:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  Additionally, class settlements reached prior to formal class certification require a "heightened fairness inquiry." *Roes 1–2 v. SFBSC Mgmt.* ("*SFBSC*"), 944 F.3d 1035, 1049 (9th Cir. 2019).  When reviewing such a pre-certification settlement, the district court must not only explore the *Churchill* factors but also "look[ ] for and scrutinize[ ] any subtle signs that class counsel have allowed pursuit of their own self-interests ... to infect the negotiations."  *Id.* at 1043 (internal quotation marks omitted); *see also, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ("Especially in the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement.").

### B.    Analysis

#### 1.    Class Certification (Rule 23(a)–(b))

##### a.    Rule 23(a) Prerequisites

This analysis begins with an examination of whether class treatment remains appropriate under Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequate protection by the class representative.

###### i.    Numerosity

The class contains 230 members.  Because joinder of all members would be impracticable, the numerosity requirement appears to be met.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), ("The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'") (citation omitted); *see also McCluskey v. Trustees of Red Dot Corp.*

1  *Employee Stock Ownership Plan & Trust*, 268 F.R.D. 670, 673-74 (W.D. Wash. 2010) (collecting

2  cases finding classes with only a few dozen members to meet the numerosity standard).

3  ### ii.     Commonality

4  Rule 23(a)(2) commonality requires "questions of fact or law common to the class,"

5  though all questions of fact and law need not be in common. Hanlon, 150 F.3d at 1026. The focus

6  of this action—whether Defendant's practice of reporting expunged criminal records constituted a

7  reasonable procedure under the FCRA—is common to all class members.  *See Ramirez v. Trans*

8  *Union, LLC*, 301 F.R.D. 408, 417-419 (N.D. Cal. 2014) (finding that FCRA § 1681e(b) claim

9  presented common questions, and certifying class); *Patel v. Trans Union, LLC*, 308 F.R.D. 292,

10  304-05 (N.D. Cal. 2015) (same).

11  ### iii.     Typicality

12  Rule 23(a)(3) requires that the plaintiff show that "the claims or defenses of the

13  representative parties are typical of the claims or defenses of the class."  Here, Defendant

14  furnished a consumer report about Plaintiff and the other 229 class members that contained an

15  expunged, sealed, or removed criminal record to a third party.  Plaintiff's claims are therefore

16  typical of those of the class.

17  ### iv.     Fair and Adequate Representation

18  Rule 23(a)(4) requires that class representatives, the named plaintiff and his or her counsel,

19  must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Legal

20  adequacy is satisfied if: (1) if there are no antagonistic or conflicting interests between the named

21  plaintiffs and their counsel, and the absent class members; and (2) the named plaintiffs and their

22  counsel will vigorously prosecute the action on behalf of the class."  *Hansen v. Ticket Track, Inc.*,

23  213 F.R.D. 412, 415 (W.D. Wash. 2003) (citing *Hanlon*, 150 F.3d at 1020); *see also Lerwill v.*

24  *Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

25  Here, there are no apparent antagonistic or conflicting interests.  Further, class counsel's

26  experience and competency in consumer reporting litigation indicate their adequacy to represent

27  the Settlement Class.  Additionally, following the modifications incorporated in the Final

Settlement Agreement, class counsel's fee request and the award to Mr. Stewart no longer raise concerns about the fairness of the settlement, as discussed further below. *See infra*, at Part III.

### b.     Rule 23(b) Requirements

The analysis then requires that one or more subsections of Rule 23(b) be met. Rule 23(b)(3) is at issue here, and it requires the Court to find that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). That is, Rule 23(b)(3) "add[s] 'predominance' and 'superiority' to the qualification-for-certification" requirements. *Amchem*, 521 U.S. at 615. In enacting a "'close look' at the predominance and superiority criteria," *id.*, courts consider the nonexhaustive list of factors listed in Rule 23(b)(3), namely:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D).

Here, the Settlement Class satisfies Rule 23(b)(3) in that common issues predominate, given that the commonality inquiry identified under Rule 23(a)(2), *see supra*, at Part II(B)(1)(b), is a significant aspect of the case that may be resolved for all class members in a single adjudication. Furthermore, "a class action is superior to other available methods for fairly and efficiently adjudicating," because there are no issues of manageability by certifying the class for settlement purposes and the singular resolution of three hundred claims is evidently superior to the adjudication of 230 individual lawsuits.

### 2.     Review of Settlement Agreement (Rule 23(e))

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. Further, in evaluating a potential

United States District Court
Northern District of California

settlement, Federal Rule of Civil Procedure 23(e) "requires the district court to determine whether [the] proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at 1026.  And where, as here, the parties reach a settlement prior to formal class certification (*i.e.*, certification decided in the course of continuing litigation, rather than for the purposes of settlement), courts must examine the settlement with "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Bluetooth*, 654 F.3d at 946 (citing *Hanlon*, 150 F.3d at 1026)).

### a.    Adequacy of Notice

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Just. v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). Adequate notice requires: "(i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Settlement Class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *see also In re Apple Device Performance*, 50 F.4th 769, 779 (9th Cir. 2022).  Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  However, "neither Rule 23 nor the Due Process Clause requires actual notice to each individual class member." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017).

On November 14, 2023, the Court approved the Notice Plan as constitutionally sound.  *See* Prelim. Appr. Order 8–9.  Pursuant to those approved procedures, ALCS provided direct notice to at least 229 of the 230 class members via first-class mail and/or email notice.  *See* Fiori Decl. ¶ 7;

Case No.: 22-cv-01926-EJD
ORDER GRANTING MOTS. FOR SETTLEMENT APPROVAL & ATTYS.' FEES
11

United States District Court
Northern District of California

1  Updated Fiori Decl. ¶ 7.  The most recently filed declaration from ALCS indicates that 1 class

2  member did not receive notice and/or a claim form because both methods of notice were returned

3  as undeliverable.  *See* Updated Fiori Decl. ¶¶ 4–7.  In sum, ALCS was able to provide notice to

4  more than 99% of the class.

5        Based upon the foregoing, the Court finds that the Settlement Class has been provided

6  adequate notice.

7  **b.      Fairness, Reasonableness, and Adequacy**

8        "Fed. R. Civ. P. 23(e) requires the district court to determine whether a proposed

9  settlement is fundamentally fair, adequate, and reasonable."  *Staton*, 327 F.3d 938, 959 (9th Cir.

10  2003). In the Ninth Circuit, courts use a multi-factor balancing test to analyze whether a given

11  settlement is fair, adequate, and reasonable. That test includes the following eight factors, known

12  as the *Hanlon* or *Churchill* factors:

13            (1) the strength of the plaintiffs' case; (2) the risk, expense,
          complexity, and likely duration of further litigation; (3) the risk of
14            maintaining class action status throughout the trial; (4) the amount
          offered in settlement; (5) the extent of discovery completed and the
15            stage of the proceedings; (6) the experience and views of counsel; (7)
          the presence of a governmental participant; and (8) the reaction of the
16            class members to the proposed settlement.

17  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (quoting *Churchill*

18  *Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *see also Hanlon*, 150 F.3d at 1026

19  (listing same factors).  For pre-certification settlements, the Court also scrutinizes the parties'

20  conduct and the settlement agreement for any subtle signs of collusion of the pursuit of self-

21  interest.  *See Bluetooth*, 654 F.3d at 947.

22  **i.      *Hanlon* Factors (1)–(3)**

23        "The first and second [Hanlon] factors require the Court to consider the strength of the

24  Plaintiffs' case on the merits balanced against the amount offered in the settlement and the risks of

25  further litigation." Foster v. Adams & Assocs., Inc., No. 18-CV-02723-JSC, 2022 WL 425559, at

26  *4 (N.D. Cal. Feb. 11, 2022).  Although Plaintiff believes he has a strong case, he recognizes the

27  existence of a number of obstacles to achieving a successful result through further litigation, most

28  Case No.: 22-cv-01926-EJD
ORDER GRANTING MOTS. FOR SETTLEMENT APPROVAL & ATTYS.' FEES

*United States District Court*
*Northern District of California*

1    specifically with respect to establishing the willful nature of Defendant's conduct, which would

2    affect the availability of statutory and punitive damages.  *See* Approval Mot. 11; *Safeco Insurance*

3    *Co. of America v. Burr*, 551 U.S. 47, 69 (2007) (willfulness standard not met "unless the action is

4    not only a violation [of the FCRA] under a reasonable reading of the statute's terms, but shows

5    that the company ran a risk of violating the law substantially greater than the risk associated with a

6    reading that was merely careless").  Further, litigation would be lengthy and expensive, requiring

7    full class certification and merits discovery—including with respect to the complex willfulness

8    issue—and dispositive motion practice.  *See* Approval Mot. 11.  Plaintiff further anticipates that

9    Defendant would appeal unfavorable decisions, therefore further imperiling, or at least delaying,

10   any relief for class members.

11          The third *Hanlon* factor looks to the risk of maintaining the class certification if litigation

12   were to proceed.  Here, there was a risk that the class would not be certified at all, given that

13   Defendant would have vigorously disputed certification based on issues such as the

14   demonstrability of damages.  *See id.*  Moreover, the Court cannot conclude that there would be no

15   risk of decertification.

16          Based on these considerations, the Court finds the first three *Hanlon* factors support

17   approval of the Final Settlement Agreement.

18                          **ii.    *Hanlon* Factor (4)**

19          The fourth *Hanlon* factor considers the amount offered in settlement.  The statutory

20   damages range for willful violations of the FCRA range from $100 to $1,000.  *See* Approv. Mot.

21   12 (citing 15 U.S.C. § 1681n).  Here, each class member will receive at least $300, and may

22   receive up to $5,000 upon submission of a valid claim with a "simple attestation of damages."

23   The Court finds that the settlement amount is eminently reasonable.  *See also, e.g.*, *Patel v. Trans*

24   *Union, LLC*, No. 14-cv-00522, 2018 WL 1258194, at *5 (N.D. Cal. Mar. 11, 2018) (approving

25   settlement of FCRA action for $400 automatic payment and further receipt of settlement funds

26   upon submission of claim).

27

28   Case No.: 22-cv-01926-EJD
     ORDER GRANTING MOTS. FOR SETTLEMENT APPROVAL & ATTYS.' FEES
                                          13

United States District Court
Northern District of California

### iii.     Hanlon Factor (5)

The fifth *Hanlon* factor concerns the extent of discovery and the stage of the proceedings. The parties here settled this action prior to any motion practice.  However, the parties engaged in substantial information exchanges related to the viability of class certification, the likelihood of identifying a larger class of consumers, and the general strengths and weaknesses of Plaintiff's case. *See* Mot. 13.  The parties subsequently engaged in lengthy, adversarial, and arms-length settlement discussions before a highly experienced mediator.  Although the Court does not find this *Hanlon* factor to affirmatively favor settlement approval, it also does not find—in light of the information exchange and mediation process—that the factor elucidates a cause for concern as to the fairness, reasonableness, or adequacy of the Final Settlement Agreement.  It accordingly treats the fifth *Hanlon* factor as neutral.

### iv.     Hanlon Factor (6)

The sixth *Hanlon* factor evaluates the experience and views of counsel.  As the Court stated during the final fairness hearings, it finds that Plaintiff's counsel, who are experienced class action litigators, represented the Settlement Class in this action not only fairly, but admirably. Class counsel have indicated that their experience informs their belief that the Final Settlement Agreement is an excellent result for the Settlement Class, and that they would not have otherwise agreed to settle.  Giving due "consideration to the opinion of competent counsel," and in consideration of the foregoing, the Court agrees with counsel's statement that the settlement is fair, adequate, and reasonable.  *Ching v. Siemens Indus.*, Inc., No. 11-cv-04838-MEJ, 2014 WL 2926210, at *5 (N.D. Cal. June 27, 2014) (quotations and citation omitted).

### v.     *Hanlon* Factor (7)

The seventh *Hanlon* factor is not applicable here, as there is no government participant in these proceedings.

### vi.     *Hanlon* Factor (8)

The last *Hanlon* factor—the reaction of the class members—strongly favors approval. "The Court received no objections to the settlement, and this 'absence of a negative reaction'

Case No.: 22-cv-01926-EJD
ORDER GRANTING MOTS. FOR SETTLEMENT APPROVAL & ATTYS.' FEES
14

United States District Court
Northern District of California

1    certainly weighs in favor of approval." *In re LinkedIn ERISA Litig.*, No. 20-cv-05704, 2023 WL

2    8631678, at *7 (N.D. Cal. Dec. 13, 2023) (quoting *Chun-Hoon v. McKee Foods Corp.*, 716 F.

3    Supp. 2d 848, 852 (N.D. Cal. 2010)).

4                                    vii.    ***Bluetooth* Analysis**

5             A settlement agreement negotiated before the class has been certified requires a "higher

6    level of scrutiny" to ensure it is free from "collusion or other conflicts of interest." *SFBSC*, 944

7    F.3d at 1048.  Under such circumstances, the Court must determine whether the settlement was a

8    result of good faith, arms-length negotiations without collusion, whether explicit or indicated only

9    through subtle signs. *Bluetooth*, 654 F.3d at 947. These subtle signs of collusion include:

> (1) when counsel receive a disproportionate distribution of the
> settlement; (2) when the parties negotiate a clear sailing arrangement
> (i.e., an arrangement where defendant will not object to a certain fee
> request by class counsel); and (3) when the parties create a reverter
> that returns unclaimed [funds] to the defendant.

13   *Id.* at 1049 (quotations and citations omitted).

14            The Court noted the potential for *Bluetooth* concerns in its Preliminary Approval Order,

15   which discussed the fees allocated to both counsel and Mr. Stewart, as well as the existence of a

16   clear sailing agreement. *See* Prelim. Appr. Order 6–8.  However, the Court found even in the

17   Preliminary Approval Order that the amounts allocated to the Settlement Class were fair,

18   reasonable, and adequate. *See id.* at 8.  Further, the parties have fully alleviated these concerns in

19   the Final Settlement Agreement, and the Court is satisfied that the prior version of the agreement

20   was not the result of even subtle collusion.  The Final Settlement Agreement provides for a

21   reasonable amount of attorneys' fees, as discussed below; does not contain a clear sailing

22   provision; and—like the Original Settlement Agreement—ensures that the Settlement Fund is non-

23   reversionary.  The Court accordingly holds that the *Bluetooth* analysis is satisfied.

24        **C.      Certification Is Granted and the Settlement Is Approved**

25            For the foregoing reasons, the Court finds that the Settlement Class is properly certified for

26   purposes of settlement, and that the Final Settlement Agreement is fair, reasonable, and adequate.

27   Accordingly, the Approval Motion will be granted.

28   Case No.: 22-cv-01926-EJD
     ORDER GRANTING MOTS. FOR SETTLEMENT APPROVAL & ATTYS.' FEES

United States District Court
Northern District of California

III.    MOTION FOR ATTORNEYS' FEES & COSTS; PLAINTIFF'S SERVICE AWARD

As modified by the parties' agreement resulting in the Final Settlement Agreement, Plaintiff seeks an award of attorneys' fees of $97,750.00, litigation costs of $10,000.00, and a service award of $5,000.00.

A.    Attorneys' Fees and Costs

1.    Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941. "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. *Id.* at 942.

Under the percentage-of-recovery method, the attorneys are awarded fees in the amount of a percentage of the common fund recovered for the class. *Id.* In general, a 25% portion of the settlement fund is considered the benchmark for a reasonable fee award. *See id.* Under the lodestar method, attorneys' fees are "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Id.* at 941. This amount may be increased or decreased by a multiplier that reflects factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 942. Courts often use the lodestar calculation as a cross-check on the percentage-of-the-fund award. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002).

Further, an attorney is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted).

Case No.: 22-cv-01926-EJD
ORDER GRANTING MOTS. FOR SETTLEMENT APPROVAL & ATTYS.' FEES

16

1

2.      **Analysis**

The Court finds the request of $97,750.00 in attorneys' fees to be reasonable under both

the percentage-of-recovery and the lodestar methods.  The requested fees constitute 25.5% of the

Settlement Fund total of $383,750.00, thus falling nearly exactly on the Ninth Circuit's 25%

benchmark for reasonable fees.  *See Bluetooth*, 654 F.3d at 942 (citation omitted).  Further, class

counsel achieved the results of the Final Settlement Achievement after expending substantial

efforts in the areas of pre-suit investigation, pleadings, discovery, mediation, settlement drafting

and notice, and motions practice related to settlement approval, totaling 410 hours. *See* Decl. of

John Soumilas ("Soumilas Decl.") ¶ 14, ECF No. 54-2.  Counsel has submitted that these hours,

multiplied by hourly rates for counsel that the Court agrees are reasonable for this region and

given the experience of counsel, yield a lodestar fee amount of $260,167.00, and accordingly a

multiplier of 0.38.  This low multiplier strongly supports granting the benchmark request as

reasonable, and the Court will do so.

Counsel has also provided a summary of categorized costs incurred in litigating this

action—including expenses related to the mediation, conferences, filing fees, and travel and

lodging for the final approval hearing—showing a total expense amount of $10,176.58.  *See*

Soumilas Decl., Exh. C, ECF No. 54-5.  The Court finds these costs reasonable, and will

accordingly grant the requested cost award of $10,000.00.

**B.      Plaintiff's Service Award**

The $5,000.00 service award requested for Mr. Stewart is "presumptively reasonable" in

this district.  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015)

(collecting cases and explaining that $5,000 incentive award is presumptively reasonable).  The

Court is cognizant of Mr. Stewart's contributions to this litigation, not least for the act of putting

his name on public filings identifying the very criminal records that were expunged, and finds the

request reasonable.

**IV.    CONCLUSION**

For the foregoing reasons, the Court hereby ORDERS as follows:

Case No.: 22-cv-01926-EJD
ORDER GRANTING MOTS. FOR SETTLEMENT APPROVAL & ATTYS.' FEES

17

United States District Court
Northern District of California

1.  The Motion for Final Approval of Class Action Settlement is GRANTED as to the Final Settlement Agreement.

2.  The Motion for Attorneys' Fees and Costs and Plaintiff's Service Award, as modified by the parties' notice of the Final Settlement Agreement, is GRANTED.

3.  Without affecting the finality of this order in any way, the Court retains jurisdiction of all matters relating to the interpretation, implementation, and enforcement of this order and the Final Settlement Agreement.

4.  The parties shall file a post-distribution accounting in accordance with this District's Procedural Guidance for Class Action Settlements, and no later than March 20, 2025.

**IT IS SO ORDERED.**

Dated: March 20, 2024

EDWARD J. DAVILA
United States District Judge

Case No.: 22-cv-01926-EJD
ORDER GRANTING MOTS. FOR SETTLEMENT APPROVAL & ATTYS.' FEES
18